UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY W. HORTON,

                Petitioner,                Case No. 2:23-cv-11297
                                                                 Hon. Susan K. DeClercq

v.

JEFFREY HOWARD,[1]

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, GRANTING A CERTIFICATE OF APPEALABILITY WITH RESPECT TO PETITIONER'S SECOND CLAIM, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Timothy W. Horton, a Michigan prisoner, filed this petition for writ of habeas corpus under 28 U.S.C. § 2254. Horton was convicted after a jury trial in the Wayne Circuit Court of armed robbery, MICH. COMP. LAWS § 750.529; first-degree home invasion, MICH. COMP. LAWS § 750.110a(2); stealing a financial transaction device, MICH. COMP. LAWS § 750.157n(1); carrying a concealed weapon, MICH. COMP. LAWS § 750.227; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and felony-firearm, MICH. COMP. LAWS § 750.227b. Horton was sentenced to a controlling term of 18-30 years for the armed robbery, a consecutive 2-year term for the felony-firearm, and lesser concurrent terms for his other convictions.

---

[1] The Court amends the caption to reflect the current Warden of Petitioner's correctional facility. **Error! Main Document Only.** *See* Rule 2(a), 28 U.S.C. § 2254.

- 1 -

The habeas petition raises three claims: (1) evidence of Horton's prior convictions was erroneously admitted at trial, (2) the prosecutor committed misconduct by mischaracterizing and eliciting false testimony, and (3) the trial court incorrectly scored the sentencing guidelines. The petition will be denied because none of the claims merit habeas relief. The Court will, however, grant Horton a certificate of appealability with respect to his second claim, and it will grant him permission to appeal in forma pauperis.

I

This case stems from the robbery of a residential marijuana grow operation in Harper Woods. Joseph Drouillard testified at Horton's jury trial that on the evening of January 2, 2018, he was at his residence in Harper Woods with his friend Steven Law. As Law unlocked the back door to leave, two hooded and masked men forced their way inside. (ECF No. 13-20, at 856-57.)

A man later identified as Michael Gadie entered the residence first and held a handgun to Law's face. The person later identified as Horton entered behind Gadie. Gadie yelled at Law, "Where is the shit?" and fired a shot from his handgun at Drouillard's dog. (ECF No. 13-21, PageID.918-23.) Drouillard heard the commotion from another room and fled. He hid in his neighbor's yard and called 9-1-1. (ECF No. 13-20, PageID.857-74.)

Gadie took cash and a manila envelope out of Drouillard's room. The two men then led Law into the basement at gunpoint, where Law led them to a garbage bag full of marijuana. (ECF No. 13-21, PageID.925-28.)

Meanwhile, Drouillard was on the phone with the police as he watched his house from his hiding spot. He saw the two intruders emerge from his backyard and run to an older model Ford Taurus. The man Drouilliard later identified as Gadie got into the front passenger seat. The other

man threw a black garbage bag into the back of the vehicle, and then got into the driver's seat and drove off. (ECF No. 13-20, PageID.860-64.)

Responding to the scene, Harper Woods Officer Jason Hammerle saw an older model Ford Taurus pass in front of him near the location of the robbery. Another officer spotted the same vehicle continuing into Detroit. Eventually, officers saw the car stop. The driver—later identified as Horton—ran one way away from the vehicle, and the passenger—later identified as Gadie—ran the other way. (*Id.* PageID.788-848.)

An officer pursued Horton on foot with his K-9. Horton refused to stop until the officer ordered his K-9 to apprehend him. Horton was then placed under arrest, with the keys to the Taurus still in his hand. Horton was wearing a blue knit hat with the top cut off, allowing it to be positioned to cover his face. Other officers located and arrested Gadie, who was hiding on a nearby porch. The garbage bag full of marijuana was found in a nearby yard. (*Id.* PageID.810-30.)

Police determined that the vehicle, a 2003 Ford Taurus, was registered to Horton. (ECF No. 13-22, PageID.993.) They found a padded manila envelope that contained marijuana seeds addressed to Drouillard inside the vehicle. (ECF No. 13-20, PageID.798.)

Horton testified in his own defense. He explained that on the evening of the incident he drove Gadie and another man that he did not know (someone introduced to him as "JR") to the Harper Woods location. He waited in the car while the two men walked towards the house. He had no idea why they were there. After the men returned, Horton dropped JR off at a house, and then Gadie got out of the car when he saw a police officer. Horton continued to drive until his car happened to get a flat tire. Officers arrested him while he was walking away from his disabled vehicle. (ECF 13-22, PageID.972-83.)

- 3 -

The jury found Horton guilty as charged. Following sentencing, Horton filed a direct appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal that raised the following claims:

> I. The trial judge erred by allowing the prosecutor, in this prosecution for home invasion and robbery, to cross-examine defendant-appellant Timothy Horton about his prior breaking-and-entering convictions without first conducting the balancing test specified by MRE 609. The judge compounded her mistake by then allowing the prosecutor to argue the prior convictions as proof of a "pattern of behavior"—in other words, as proof of Mr. Horton's propensity to commit such crimes.
>
> II. Mr. Horton was denied his Fourteenth Amendment right to a fair trial when the prosecutor mischaracterized a witness' prior testimony as identifying Mr. Horton at the scene of the crime and then asked the jury to rely on that mischaracterized testimony in closing argument. The transcript of the witness' prior testimony clearly shows that the witness was unable to identify Mr. Horton at the time of the robbery and that he was only able to identify Mr. Horton in the preliminary examination by the clothes Mr. Horton was wearing in the courtroom.
>
> III. It was error for the sentencing judge to adopt increased sentencing guideline scores for Offense Variables Eight, Nine, and Ten. In each instance, the judge's findings of fact were based on scant justification insufficient to satisfy the statutory requirements of the sentencing guidelines.

The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Horton*, No. 348236, 2021 WL 137375 (Mich. Ct. App. Jan. 14, 2021) (ECF No. 13-26, PageID.1090.) Horton appealed to the Michigan Supreme Court, but his application for leave to appeal was denied. *People v. Horton*, 970 N.W.2d 664 (Mich. 2022) (Table) (ECF No. 13-27, PageID.1255.)

Horton's federal habeas petition raises the same claims that he raised on direct appeal.

II

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established

Supreme Court law. *Id*. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

III

A

Horton's first claim asserts that the trial court erred in allowing the prosecutor to elicit testimony from him on cross-examination regarding his prior burglary convictions. Horton presented this claim to the Michigan Court of Appeals on direct appeal exclusively under state evidentiary law. (ECF No. 13-26, PageID.1175-82.) Specifically, Horton asserted that the trial court erred in failing to apply Michigan Rule of Evidence 609(b) before admitting the evidence, and that it erroneously applied Rule 404(b) instead. (*Id.*) Horton did not assert in state court, nor does he assert here, that the evidentiary error violated his federal constitutional rights. (ECF No. 1, PageID.4.)

The Court of Appeals found that the trial court erred in admitting the prior convictions under Rule 404(b), and that it should have conducted the balancing test required by Rule 609(a)(2)(B). (ECF No. 13-26, PageID.1091-95). Nevertheless, the court found that the error did not warrant reversal because the error was harmless under the standard set forth in Michigan Compiled Laws § 769.26 and *People v. Lukity*, 460 Mich. 484, 495 (1999). (ECF No. 13-26, PageID.1091, 1095.)

The claim is not cognizable in this action because it rests solely on an alleged violation of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. A federal habeas court does not have authority to re-examine state-law determinations on state-law questions. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. A decision by the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Likewise, the determination whether a state court applied its state-law harmless error test correctly does not present a federal issue. *See, e.g., Porter v. Nessel*, 2019 WL 446936; 2019 U.S. Dist. LEXIS 17818, *34-35 (E.D. Mich. Feb. 4, 2019).

For Horton to present a cognizable claim regarding the admission of his prior convictions, he first would have had to present a claim to the state courts that the erroneous admission of the evidence somehow violated his federal constitutional rights. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982). Horton presented no such argument to the state courts, and so he cannot (and does not) present one here. Habeas relief may not be granted on an unexhausted federal claim. *See* 28 U.S.C. § 2254(b).

Horton's first claim, asserting only a violation of state evidentiary law, therefore does not provide a basis for granting habeas relief.

B

Horton's second claim asserts that the misconduct of the prosecutor denied him his federal constitutional right to a fundamentally fair trial in violation of due process. Specifically, he claims that the prosecutor mischaracterized testimony and improperly elicited false testimony from the complainants to suggest that they had identified Horton's clothing on the night of the incident.

After quoting relevant parts of the trial transcript, the Michigan Court of Appeals agreed that the prosecutor had deliberately attempted to mislead the jury:

> The prosecutor intentionally questioned Law in a misleading manner in order to deceive the jury that he had, at the preliminary examination, accurately described the clothing that defendant was wearing when he was arrested. As defense counsel revealed on cross-examination, it is plain to see that when Law referred to defendant's "gray shirt," he was referring to the shirt that defendant was wearing at the preliminary examination, not the shirt that Gadie's accomplice was wearing during the robbery. The prosecutor could not possibly have been mistaken about the meaning of Law's preliminary examination testimony, yet she used it to solicit his testimony at trial that Gadie's accomplice was wearing the same gray shirt that defendant was wearing when he was arrested.
>
> The prosecutor also asked Drouillard a vague question regarding defendant's clothing in order to secure an identification. Drouillard clearly testified that he only saw Gadie in his house and that it was too dark outside for him to recognize what Gadie's accomplice was wearing. Drouillard subsequently testified that, after the incident, he saw defendant and Gadie in a news article. Defense counsel objected that any identification from photographs in a news article about the incident were improperly suggestive for purposes of identification. The prosecutor asked Drouillard if "the individual" he saw in the news article was wearing the same clothing as "the person in your house." When Drouillard answered "yes," the prosecutor indicated for the record that Drouillard had identified defendant as "the person in [his] house." On cross-examination, Drouillard testified that the person he saw in the news article who was wearing the same clothing as the person he saw in his house was Gadie, not defendant.

> During her closing argument, the prosecutor again attempted to deceive the jury into believing that Law had, at the preliminary examination, correctly identified the gray shirt defendant was wearing when he was arrested as the shirt worn by Gadie's accomplice during the robbery, even after defense counsel had conclusively demonstrated the falsity of that assertion. She argued that "[d]efendant had on the gray shirt and the blue pants and he took Mr. Law through that house looking for marijuana." She argued that Law testified that Gadie's accomplice was wearing "the gray shirt and the blue pants from the preliminary examination and from the testimony on the stand."

(ECF No. 13-26, PageID.1098-99.)

The court nevertheless found that the misconduct did not warrant reversal because the misleading comments were effectively countered by defense counsel on cross-examination and during closing argument, and because the evidence of Horton's guilt was otherwise strong. (*Id.* PageID.1099.) The court referred to its earlier discussion regarding the strength of the evidence against Horton:

> The identity of Gadie's accomplice was the only issue in dispute at trial. While neither Drouillard nor Law directly and unimpeachably identified defendant, there was significant circumstantial evidence that he was Gadie's accomplice. Defendant was arrested shortly after the robbery, driving the early-2000's Ford Taurus that Drouillard had seen the robbers escape in. He had a manila envelope of marijuana seeds that was addressed to Drouillard in his back seat. While Law's testimony was inconsistent regarding the color of the shirt and pants that Gadie's accomplice wore, he was consistent from the time of his interview with the police that Gadie's accomplice wore a black hooded jacket and a mask over his face. Defendant was wearing an unusual item when he was arrested—a knit cap with the top cut out so it could be pulled down around his face and neck. A black hooded jacket the same size as defendant's sweater was found in the back seat of his car when he was arrested. Defendant never explained who that jacket belonged to. Gadie was wearing his own black jacket when he was arrested. Defendant testified at trial that Gadie's true accomplice, "JR," was wearing a blue jacket without a hood, not a black jacket with a hood.
>
> A third man was not seen, even momentarily, by Drouillard, Law, or the police officers at any time during the res gestae of the robbery. Gadie was 6 feet, 1 inch tall and weighed 290 pounds when he was arrested, and defendant was 5 feet, 11 inches tall and weighed 200 pounds when he was arrested. Defendant testified that JR was 5 feet, 9 inches tall and weighed about 170 pounds. Law described

> Gadie's accomplice as having a "medium build" compared to Gadie. Drouillard testified that Gadie's accomplice was "slimmer than Gadie" but did not indicate that he was significantly shorter than Gadie. In summary, all the evidence, except for defendant's testimony, indicates that defendant, and not JR, was Gadie's accomplice.

(*Id*. PageID.1099.)

In reviewing a prosecutorial-misconduct claim, "[t]he relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Under *Darden*, the first question is whether the prosecutor's conduct was improper. *Id.*, 477 U.S. at 180. Here, the Michigan Court of Appeals found that the prosecutor improperly suggested that the complainants identified Horton's clothing on the evening of the robbery.

Under the established Supreme Court standard, if the prosecutor's conduct was improper, as it was here, a reviewing court must then decide whether the improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (quoting *Donnelly*, 416 U.S. at 643). "'To decide this question 'the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly.'" *Stermer v. Warren*, 959 F.3d 704, 726 (6th Cir. 2020) (quoting *United States v. Young*, 470 U.S. 1, 12 (1985). Under the Supreme Court standard, a reviewing court may, among other things, factor in the weight of the evidence against the defendant to determine whether the improper comments rose to the level of a due process violation. *Darden*, 477 U.S. at 181-83; *Young*, 470 U.S. at 12-13, 19-20.

It must also be kept in mind that AEDPA "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). And because the *Darden* standard is a very general one, state courts are afforded "'more leeway ... in reaching outcomes in case-by-case determinations,'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541 U. S. 652, 664 (2004).

Here, giving the state court the leeway it is entitled to, the determination that Horton was not entitled to relief despite the improper conduct did not result from an unreasonable application of the *Darden* standard. The state court denied relief because defense counsel effectively exposed the misleading comments, and because the evidence of Horton's guilt was strong. This mode of analysis was consistent with *Darden*, which directs a reviewing court to consider the probable effect the prosecutor's improper conduct had on the jury's ability to judge the evidence fairly. *Stermer*, 959 F.3d at 726. Finding that defense counsel's response to the improper conduct was likely effective seems no more speculative than looking to the weight of the evidence as a ground for rejecting a claim. Nothing in established Supreme Court law prohibited the state court from considering that as a factor.

Reviewing courts are directed to make such probabilistic assessments regarding the impact a prosecutor's improper conduct had on the jury. *Young*, 470 U.S. at 12. The Court of Appeals did just that, and it did so based on its reasonable assessment of the trial record. The record reasonably supports the state court's finding that defense counsel forcefully responded and corrected the prosecutor's misleading suggestions. Furthermore, it was reasonable for the state court to determine based on the record evidence that the case against Horton was strong. The evidence strongly suggested that only two men were involved, that no "JR" was present, and that it was

- 10 -

Horton who was seen leaving the house, getting into the driver's seat, and fleeing his car on foot with the keys in his hand and some of the proceeds of the robbery still in his car. Horton fails to demonstrate entitlement to habeas relief with respect to this claim under § 2254(d).

C

Horton's final claim asserts that the trial court miscalculated the sentencing guidelines. He asserts that he was erroneously assessed points for moving or capturing Law, for placing him in danger, and for predatory conduct. The Michigan Court of Appeals found that the guideline variables were correctly scored. (ECF No. 13-26, PageID.1100.)

The claim is not cognizable. "A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). As discussed above, "federal habeas corpus relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67. Horton's claim that the trial court erred when it scored the offense variables therefore does not provide a basis for granting habeas relief.

IV

As the claims raised in the petition do not merit relief, the petition for writ of habeas corpus will be denied.

Before appealing this decision, Horton must obtain a certificate of appealability. The Court grants a certificate of appealability with respect to Horton's second claim because jurists of reason could find it debatable whether the state court reasonably decided whether the misconduct of the prosecutor warranted relief. Given his defense, the case against Horton hinged on the evidence that there were only two men involved in the incident. Meanwhile, the improper conduct of the prosecutor was aimed at establishing that Horton was identified by his clothing as one of the men

who went into the house. The comments had at least some tendency to undermine Horton's claim that he was just the driver, oblivious to what was happening inside the house. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Horton's other claims are not reasonably debatable.

The Court grants permission to appeal in forma pauperis because an appeal of this decision can be taken in good faith. 28 U.S.C. § 1915(a)(3).

V

Accordingly, the Court **DENIES** the petition for a writ of habeas corpus; **GRANTS** a certificate of appealability with respect to Horton's second claim; and **GRANTS** permission to appeal in forma pauperis.

**IT IS SO ORDERED**.

s/ Susan K. DeClercq<br>
Susan K. DeClercq<br>
United States District Court

Dated: 6/24/2024